IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| Maria and Jose Aguilar, ) | |
| ) | |
| Plaintiffs ) | |
| ) | Case No.  24-cv-130 |
| ) | |
| V. ) | |
| ) | |
| ) | |
| Garland C Motor Company, LLC ) | |
| d/b/a Lonestar Cadillac, ) | |
| ) | |
| Defendant ) | |

**PLAINTIFFS' ORIGINAL PETITION**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Maria and Jose Aguilar, Plaintiffs, by and through their attorney, Nicholas Parks, and file this Plaintiffs' Original Petition, complaining of Garland C Motor Company, LLC, d/b/a Lonestar Cadillac ("Defendant"), and for cause will show as follows:

**JURISDICTION AND PARTIES**

1. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which provides district courts with jurisdiction over civil actions arising from federal statutes – here, the Fair Credit Reporting Act.

2. Venue is proper pursuant to 28 U.S.C. § 1391(d) because the Defendant has sufficient contacts with the jurisdiction to subject it to personal jurisdiction.

3. Plaintiffs are Maria and Jose Aguilar, residents of Bowie County, Texas.

4. Defendant is a limited liability company, with its principal place of business located at 11675 Lyndon B. Johnson Fwy., Garland, Texas 75041. Its mailing address is 1251 E. Airport Fwy., Irving, Texas 75062.

5. Defendant's Registered Agent is Clay Cooley, also at 1251 E. Airport Fwy., Irving, Texas 75062 and can be served by personal delivery or via Certified Mail.

### RELEVANT FACTS

6. On December 7, 2023, Plaintiffs saw Defendant's advertising on Facebook Marketplace for a 2020 Cadillac Escalade with 66,848 miles for a selling price of $43,670, indicating that the price had been reduced from $47,899.

7. Plaintiffs contacted Defendant via the platform, inquiring whether the vehicle was available, to which Defendant's salesperson, Mr. Lan Nguyen, responded that it was.

8. Plaintiffs inquired whether Defendant offered financing and whether it was "in house" financing. Mr. Nguyen responded that it had "over 30 lenders" and that it could "work with all types of credit situations."

9. Plaintiffs and Mr. Nguyen subsequently spoke on the phone and arranged a time for Plaintiffs to view the vehicle.

10. Plaintiffs visited Defendant's dealership, Lone Star Cadillac, on December 8, 2023 and drove the vehicle.

11. Mr. Nguyen explained that because the vehicle was pre-owned, it came with a warranty and that everything on the vehicle was covered. He led Plaintiffs to believe that this was included in the price of the vehicle. Plaintiffs' decision to purchase the vehicle was based

at least in part upon the understanding that warranties were included in the purchase price.

12. Though the downpayment of $15,000 was provided by both Plaintiffs, Ms. Aguilar desired to finance the remaining balance on her own. Mr. Aguilar had previously expressed that this would likely be difficult considering that she did not have a job or income. Despite this, Mr. Nguyen indicated that it was possible.

13. When asked about her employment, Ms. Aguilar explained that she cleaned one house, earning about $160/month, but had no other employment. Plaintiff never filled out or saw a credit application prior to the purchase of the vehicle.

14. When signing documents during the purchase, Defendant's Finance Manager, Maximo Gomez, had Ms. Aguilar provide her digital signature on an electronic tablet one time. He then applied that signature to at least two documents, including the Credit Application and Installment Sales Contract. The identical electronic signature was applied a total of eight times to these two documents. Plaintiffs did not see either of these documents at the time of purchase. Plaintiffs would determine much later that Defendant had falsified much of the information contained within Ms. Aguilar's Credit Application.

15. Though Ms. Aguilar signed roughly twenty documents with a pen, she saw very few of them. At the time of signing, Mr. Gomez had stacked all of them together and had attached signature flags. Thus, as most of the documents only require one signature at the very bottom of the page, he held the top as she flipped through the signature flags at the bottom. Thus, every document other than the top document was partially covered by the document above it. Ms. Aguilar was able to see half or less of each document and was afforded no additional time to separate and review them.

16. On information and belief, Plaintiffs aver that some documents bearing Ms. Aguilar's signature were in fact signed by either Mr. Nguyen or Mr. Gomez.

### FACTS RELATED TO FALSE INFORMATION ON THE CREDIT APPLICATION

17. Because they had never seen the Credit Application and were not provided a copy at the time of purchase, Plaintiffs did not realize until approximately six months after their purchase that Defendant had provided false information on Ms. Aguilar's Credit Application in order to obtain financing.

18. On the Credit Application, Defendant stated that Ms. Aguilar was the "Manager" of a company named "MNA Services LLC," that she had worked there for 6 years, and that her income was $109,000 per year. Further, Defendant stated that the phone number for MNA Services LLC was (903) 691-8200.

19. Ms. Aguilar had never heard of MNA Services LLC, though her initials are "MNA." Further, Ms. Aguilar was never a Manager for MNA Services LLC, had never worked there, much less for six years, and did not have income of $109,000 per year.

20. MNA Services LLC is a CPA firm based in Cypress, Texas, or about 300 miles from where Plaintiffs live. Ms. Aguilar has never been a CPA and has never been to Cypress, Texas.

21. The phone number provided for MNA Services LLC (903-691-8200), though remarkably similar to Ms. Aguilar's phone number, is actually owned by an individual named Mary M. Young, someone Plaintiffs do not know. Upon research, Ms. Young appears to live in or near Texarkana, Texas and work at the university there and does not appear to have any connection to MNA Services LLC.

22. Finally, though Plaintiffs had lived in their home for the amount of time stated on the Credit Application, their mortgage payment is not zero, as stated on the Application. In reality, it is almost $1100 per month.

23. Ultimately, Plaintiffs determined that Defendant falsified the information on the Credit Application in order to obtain financing for the vehicle.

### FACTS RELATED TO INCREASED SALE PRICE

24. Plaintiffs also were not provided a copy of the Retail Purchase Agreement at the time of their purchase. The first time they saw the complete document was after Defendant mailed a copy to their counsel several months after the purchase. This was the only document on which the actual purchase price of the vehicle was listed.

25. Upon review, Plaintiffs noticed that Defendant had increased the sale price from the advertised price of $43,670 to $52,782, or $9,112 more.

26. Plaintiff further determined that, as a result of the increase in price by Defendant and sale of unwanted warranty policies, Defendant over-charged Plaintiff for Sales Tax in the amount of $666.72 and over-charged Dealer's Inventory Tax in the amount of $21.81.

### CAUSES OF ACTION

#### COUNT 1:  MISREPRESENTATIONS IN VIOLATION OF FCRA

27. Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

28.  In an effort to deceptively obtain consumer credit approval, Defendant knowingly misrepresented to lender GM Financial, and other potential lenders and credit reporting

bureaus, aspects of Plaintiff's credit worthiness, including but not limited to Plaintiff's income, employment, and mortgage information.

29. In an effort to obtain consumer credit approval, Plaintiffs believe that Defendant forged Ms. Aguilar's signature on some documents.

30. In an effort to obtain consumer credit approval, Defendant misrepresented the contents of documents to Plaintiffs.

31. Defendant's knowing misrepresentations were done in violation of the Fair Credit Reporting Act.

32. Plaintiff suffered damages due to Defendant's misrepresentations to lender(s) and credit reporting bureaus in furtherance of obtaining credit approval.

## COUNT 2: FRAUD

33. Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

34. Defendant knowingly misrepresented Plaintiff's income.

35. Defendant knowingly misrepresented Plaintiff's employer.

36. Defendant knowingly misrepresented Plaintiff's mortgage information.

37. Defendant knowingly misrepresented aspects of the vehicle's warranty coverage.

38. Defendant knowingly misrepresented the sale price of the vehicle.

39. Defendant knowingly misrepresented information regarding Plaintiff's credit worthiness to credit reporting agencies and banks.

40. Defendant knowingly deceived Plaintiffs regarding the contents of the transaction paperwork.

41. Defendant applied Plaintiff's digital signature to documents that Plaintiff never saw in furtherance of the fraud.

42. Defendant's misrepresentations were made with the intent to deceive Plaintiff.

43. Plaintiffs reasonably believed that Defendant's misrepresentations were true.

44. Plaintiffs relied on Defendant's misrepresentations in deciding to purchase the vehicle.

45. Plaintiffs relied on Defendant's misrepresentations in deciding to enter into the Retail Installment Sales Contract and the arbitration provision contained therein.

46. Plaintiffs relied on Defendant's misrepresentations in deciding to enter into the Retail Purchase Agreement.

47. Plaintiffs relied on Defendant's misrepresentations in deciding to enter into the Agreement to Arbitrate.

48. Plaintiffs' reliance on Defendant's misrepresentations was reasonable.

49. Plaintiffs suffered damages due to Defendant's misrepresentations.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court:

A. Declare the practices complained of herein unlawful under applicable federal and state laws;

B. Determine the damages sustained by Plaintiffs as a result of Defendant's violations of relevant statutes, and award those damages against Defendant and in favor of Plaintiffs, plus such pre-judgment and post-judgment interest as may be allowed by law;

C. Award Plaintiffs appropriate statutory and compensatory damages as provided by the state and federal statutes at issue;

D.	And, award Plaintiff appropriate and lawful attorney's fees.

## JURY DEMAND

Plaintiff hereby demands trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: September 11, 2024

Respectfully submitted,

/s/Nicholas H. Parks
Nicholas H. Parks, Attorney for Plaintiff
The Parks Law Firm, P.C.
PO Box 36458
Birmingham, AL 35236
Phone: 214-991-2642
Fax: 214-441-6425
Email: nhparks@gmail.com
Alabama Bar No: 7306M46B
Texas Bar No: 24058032